**NOTICE:** This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

2021 IL App (3d) 190021-U

Order filed July 23, 2021

IN THE

APPELLATE COURT OF ILLINOIS

THIRD DISTRICT

2021

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) ) ) | Appeal from the Circuit Court of the 10th Judicial Circuit, Peoria County, Illinois, |
| Plaintiff-Appellee, | ) ) | |
| v. | ) ) | Appeal No. 3-19-0021 Circuit No. 12-CF-1326 |
| | ) | |
| ISAAC W. SIMMONS, | ) ) | Honorable David A. Brown, |
| Defendant-Appellant. | ) | Judge, Presiding. |

JUSTICE LYTTON delivered the judgment of the court.
Justices Daugherity and O'Brien concurred in the judgment.

**ORDER**

¶ 1   *Held*:   (1) The circuit court did not abuse its discretion in sentencing defendant to 16 years' imprisonment.   (2) Defendant was not deprived of his constitutional right to conflict-free counsel, and the court conducted an adequate *Krankel* inquiry into defendant's *pro se* allegations of ineffective assistance of counsel.

¶ 2   Defendant, Isaac W. Simmons, appeals after pleading guilty to aggravated battery to a child.  First, defendant contends that the Peoria County circuit court abused its discretion by failing to fully consider his young age and rehabilitative potential when it sentenced him to 16 years' imprisonment.  Second, he argues that, following his allegations of ineffective assistance of trial

counsel, the court violated his constitutional right to conflict-free counsel when it refused to appoint new counsel, and in the alternative, the court failed to comply with *People v. Krankel*, 102 Ill. 2d 181 (1984).  We affirm.

¶ 3                                I. BACKGROUND

¶ 4        In exchange for the dismissal of several other charges, defendant pled guilty to one charge of aggravated battery to a child (720 ILCS 5/12-3.05(b)(1) (West 2012)).  The plea did not include a sentencing agreement.  The parties agreed the applicable sentencing range was 6 to 30 years' imprisonment.

¶ 5        In its factual basis for the plea, the State advised the court that the evidence would show that defendant was 21 years old at the time of the incident.  He was the father of the victim, Amarion Simmons, who was almost five months old at the time.  On the day of the incident, Amarion was "absolutely fine" when his mother laid him in bed with defendant at approximately 5 a.m.

¶ 6        Detective Tim Moore would testify that defendant told him Amarion woke up fussy around 8 a.m.  Defendant became easily frustrated when Amarion would get fussy.  Defendant tried to calm Amarion by walking and bouncing him.  Defendant demonstrated how he attempted to calm Amarion with a doll.  During the demonstration, Moore observed that "the doll's head was bouncing vigorously back and forth and side to side."  Defendant told Moore he may have bounced Amarion too hard and that when he was bouncing Amarion his head was going back and forth.  Defendant did not remember laying Amarion on the bed "because he had a blank spot."  When defendant gets upset or angry, he has "blank spots" where he cannot remember what happens.  Defendant may have shaken Amarion during the "blank spot" and did not know if Amarion was

breathing when he laid him on the bed. Defendant discovered Amarion limp, cold and not breathing at approximately 11 a.m.

¶ 7    Testimony would further show that Amarion was brought to the emergency room in cardiorespiratory arrest. He was resuscitated but was comatose and placed on life support. Amarion passed away shortly after he was removed from life support. Expert testimony would establish that Amarion had retinal hemorrhages in both eyes that "were caused by non-accidental trauma such as violent shaking or other movement which caused the child's head to rapidly and forcefully accelerate and decelerate." Expert testimony would also be presented that would indicate Amarion's death resulted from a severe brain injury due to hypoxia from nonaccidental causes.

¶ 8    After the factual basis was presented, defendant acknowledged that he believed the State would be able to produce witnesses to testify consistently with the factual basis. The court accepted the guilty plea.

¶ 9    At the sentencing hearing on February 19, 2016, the State argued for a sentence at the higher end of the range and defendant requested a sentence at the lower end of the range. The court stated that it considered the presentence investigation report, the update thereto, the arguments, defendant's statement in allocution, the statutory factors in aggravation and mitigation, the history and character of defendant and the circumstances and nature of the offense. In aggravation, the court found that defendant was in a position of trust or supervision over the victim and that there was a need to deter others. In mitigation, the court found that defendant had no prior history of delinquency or criminal conduct, the circumstances were unlikely to reoccur, and defendant's attitude and character suggest he was not likely to commit another crime. The court

3

repeated that it considered all the factors in aggravation and mitigation but was only highlighting those particularly applicable.

¶ 10  The court then acknowledged the tragic and unfortunate situation involved. It noted that the community lost a member, an infant. It further commented that defendant was a young man who graduated high school and stayed out of trouble but was now facing a 6- to 30-year sentence. The court "felt like [it] was watching [defendant] grow up, mature" while seeing him come through court and noted that defendant "was a fresh face, a young man" when the case began. The court advised that it had thought about the case for a long time and then sentenced defendant to 16 years' imprisonment.

¶ 11  On March 17, 2016, defense counsel filed a motion to reduce sentence or to withdraw the guilty plea. On August 14, 2017, defendant filed a petition for status report on that motion. Defendant then filed a letter with the court on January 30, 2018, requesting that counsel be "removed from my case so that I [can] finally have my motions addressed."

¶ 12  On June 13, 2018, defendant filed a petition for postconviction relief as a self-represented litigant. In the petition, he alleged that counsel was ineffective due to "his failure to file the petitioner's timely appeal or follow through with his Motion to Reconsider." He alleged that he made several attempts to contact counsel and the court to inquire about the motion but received no response.

¶ 13  The court dismissed the postconviction petition without prejudice, observing that there was a valid pending postplea motion and defendant's right to appeal was still preserved. In doing so, it acknowledged the lengthy time the motion had been pending. The court set a review on defendant's motion to reduce sentence or to withdraw his guilty plea. It further ordered that the same attorney who represented defendant during the prior proceedings appear at the review

4

hearing. Counsel then continued to represent defendant through the hearing on his postsentencing motion.

¶ 14　　At the hearing on the motion, counsel stated that defendant only wanted him to argue the portion of the motion seeking to reconsider his sentence. Defendant agreed. After hearing arguments on the motion, the court advised that it had reviewed the motion and the transcripts from the plea hearing and sentencing hearing. The court stated it had struggled with the sentence and noted that on one side "a[n] incredibly serious and brutal crime had been committed against a defenseless child" and on the other "was a young man, at that time a very—a really young man, who came before the Court with virtually no criminal record." The court had weighed the factors as best as it could and acknowledged that had it been someone else before the court, the sentence would have likely been substantially greater. It reconsidered the sentence in light of the motion and counsel's argument and determined the sentence was appropriate for the circumstances. The court denied the motion, and defendant appeals.

¶ 15　　　　　　　　　　　　　　II. ANALYSIS

¶ 16　　　　　　　　　　　　　　A. Sentence

¶ 17　　Defendant contends that the court abused its discretion in sentencing him to 16 years' imprisonment without fully considering and giving appropriate weight to his age and rehabilitative potential.

¶ 18　　"It is well settled that a trial judge's sentencing decisions are entitled to great deference and will not be altered on appeal absent an abuse of discretion." *People v. Jackson*, 375 Ill. App. 3d 796, 800 (2007). A reviewing court "must not substitute its judgment for that of the trial court simply because the reviewing court would have weighed the factors differently." *Id.* at 800-01. A sentence that falls within the statutorily prescribed range is presumptively valid (*People v. Busse*,

5

2016 IL App (1st) 142941, ¶ 27), and "is not an abuse of discretion unless it is manifestly disproportionate to the nature of the offense" (*People v. Franks*, 292 Ill. App. 3d 776, 779 (1997)). The sentencing "court is not required to give defendant's rehabilitative potential more weight than the seriousness of the offense." *People v. Nussbaum*, 251 Ill. App. 3d 779, 781 (1993). We presume the circuit court considered the relevant factors and mitigation evidence presented. *People v. Wilson*, 2016 App (1st) 141063, ¶ 11. The court is not required to "recite and assign a value to each factor." *Id.* It is defendant's burden to show that the court did not consider the relevant factors. *Id.*

¶ 19 Defendant pled guilty to aggravated battery of a child, a Class X felony with a sentencing range of 6 to 30 years' imprisonment. 720 ILCS 5/12-3.05(b)(1), (h) (West 2012); 730 ILCS 5/5-4.5-25(a) (West 2012). His sentence of 16 years' imprisonment falls within that range and is presumptively valid. See *Busse*, 2016 IL App (1st) 142941, ¶ 27. Moreover, we cannot say that the sentence is manifestly disproportionate to the nature of the offense, which involved violent trauma to, and the death of, an infant. Additionally, the court's comments make clear that it considered the relevant mitigating factors and notably considered defendant's youth and lack of criminal history. Defendant has not shown that the court failed to consider any relevant mitigating factor. We therefore conclude the court did not abuse its discretion in sentencing defendant.

¶ 20                              B. Conflict of Interest

¶ 21 Defendant contends that counsel had a *per se* conflict of interest when he continued to represent defendant after defendant accused him of ineffective assistance. Alternatively, defendant argues that the court failed to comply with *Krankel*, 102 Ill. 2d 181, after he raised his claim of ineffective assistance.

6

¶ 22    "It is well settled that a criminal defendant's sixth amendment right to effective assistance of counsel includes the right to conflict-free representation." *People v. Fields*, 2012 IL 112438, ¶ 17. "[A] *per se* conflict arises when a defendant's attorney has a tie to a person or entity that would benefit from an unfavorable verdict for the defendant." *Id.* Our supreme court has found three situations where such a conflict exists: "(1) where defense counsel has a prior or contemporaneous association with the victim, the prosecution, or an entity assisting the prosecution; (2) where defense counsel contemporaneously represents a prosecution witness; and (3) where defense counsel was a former prosecutor who had been personally involved with the prosecution of defendant." *Id.* ¶ 18.

¶ 23    Defendant's situation does not fall into any of these three scenarios. And while the *Fields* court indicated it was not foreclosing the possibility of other categories of *per se* conflicts, (*id.* ¶ 37 (stating that the supreme court need not consider whether additional situations might be found where a *per se* conflict exists)), it emphasized that long standing precedent had only found the three categories noted above and concluded that the appellate court erred in finding an additional basis for a *per se* conflict in that case. *Id.* ¶ 41.

¶ 24    The instant case does not warrant a departure from *Fields*. Specifically, the three categories of *per se* conflicts all involve situations where, because of counsel's relationship with some other person or entity, one could reasonably question whether counsel's loyalties would be torn. There is no such relationship at issue here. We therefore conclude that counsel did not labor under a *per se* conflict of interest.

¶ 25    We also reject defendant's alternative argument that the matter should be remanded for a hearing, with new counsel, pursuant to *Krankel*. A preliminary *Krankel* inquiry looks to the factual basis of defendant's claim of ineffective assistance of counsel to determine whether to appoint new

7

counsel to pursue the claims. *People v. Nitz*, 143 Ill. 2d 82, 134 (1991). If possible neglect is shown, new counsel should be appointed to argue defendant's ineffective assistance claims. *Id.* at 134-35. The court can base its evaluation of the allegations "on its knowledge of defense counsel's performance." *People v. Moore*, 207 Ill. 2d 68, 79 (2003).

¶ 26　　Defendant presented a discreet allegation regarding counsel's alleged ineffectiveness—that counsel failed to have his postsentencing motion heard and timely appeal. The court would have been able to evaluate the allegation based on its own knowledge because the record was clear concerning counsel's performance in failing to have the motion set for hearing for over two years. However, the record was also clear that defendant had not suffered prejudice from the delay because his right to an appeal was preserved. See, *e.g.*, *People v. Valdez*, 2016 IL 119860, ¶ 14 (providing that to establish prejudice in a claim of ineffective assistance of counsel there must be "a reasonable probability that, but for counsel's errors, the result of the proceedings would have been different").

¶ 27　　The court's order dismissing defendant's postconviction petition shows that the court was aware of the delay and the lack of prejudice. Because counsel's delay and the lack of prejudice therefrom were apparent from the record such that the court could dispense of the claim without further input, we cannot conclude that the court's failure to hold a formal hearing or appoint new counsel was error. Additionally, the court provided defendant the relief he was seeking by having the motion docketed for hearing, after which defendant was able to proceed with his appeal. In sum, counsel's lengthy delay in bringing the postsentencing motion to hearing was ultimately of no consequence to defendant where his motion was heard and his appellate rights were preserved.

¶ 28　　　　　　　　　　　　　　　III. CONCLUSION

¶ 29　　The judgment of the circuit court of Peoria County is affirmed.

8

¶ 30          Affirmed.